PHILADELPHIA INQUIRER CO. v. COE, Commissioner of Patents.

No. 6271.

District Court of the United States for the District of Columbia.

April 15, 1941.

428

Frank E. Scrivener and Chas. K. Davies, Jr., both of Washington, D. C., for plaintiff.

W. W. Cochran, of Washington, D. C., for defendant.

CHESNUT, District Judge.

The question to be decided in this case is whether the Philadelphia Inquirer Company (a newspaper publisher) is entitled to federal registration of the trade-mark "Everybody's Weekly" for a "weekly newspaper section". The mark was rejected by the Examiner in the Patent Office, and also by the Commissioner on an ex parte appeal to him, on the ground of prior ownership and use of the same mark by a British weekly magazine.

■ There are no jurisdictional or procedural questions raised in the case. It is conceded that the application for registration was duly conducted in the Patent Office; that no appeal was taken to the United States Court of Customs and Patent Appeals; and the jurisdiction of this court to entertain the case is based on the Federal Trade-Mark Act of February 20, 1905, c. 592, § 9, as amended March 2, 1929, c. 488, § 2(b) now codified in 15 U.S.C.A. § 89, which, as construed by the Supreme Court, makes applicable the procedure by bill in equity to obtain a patent provided for in 35 U.S.C.A. § 63, R.S. § 4915. American Steel Foundries v. Robertson, Commissioner, 262 U.S. 209, 43 S.Ct. 541, 67 L.Ed. 953; United States ex rel. Baldwin Co. v. Robertson, Commissioner, 265 U.S. 168, 44 S.Ct. 508, 68 L.Ed. 962; Pennzoil Co. v. Hercules Powder Co., Cust & Pat.App., 95 F.2d 339; Drackett Co. v. Chamberlain Co., 3 Cir., 81 F.2d 866, certiorari denied 299 U.S. 503, 57 S.Ct. 16, 81 L.Ed. 373.

The Philadelphia Inquirer filed its application for registration on May 20, 1937, reciting the adoption of the mark on May 14, 1927, and its continuous use in interstate commerce thereafter. On examination the application was passed for publication which was made in the Official Gazette December 28, 1937. Opposition was filed by King Features Syndicate, Inc., based on its use of the mark or name "Everybody's Pictorial Weekly" in connection with a newspaper section; but, after hearing, the opposition was dismissed on the failure to show priority in use by the opposer. Nevertheless the Examiner refused registration because in the opposition proceeding an exhibit had been offered in evidence showing use of the mark by a magazine published in London, England, which had been sold in the United States in interstate commerce for several years prior to the earliest date of use claimed by the applicant, who thereupon appealed to the Commissioner. The

opposer took no appeal. The Commissioner affirmed the Examiner in refusing registration of the mark. The gist of his ruling is pointed out in the final paragraph of a short opinion reading as follows:

"Counsel insist that because the two publications to which the mark is applied differ widely as to subject matter, manner of sale, class of purchasers reached and territory covered in their circulation, there is no likelihood of confusion between applicant's mark and that of the British concern. It must be conceded that the likelihood of confusion is slight, but that fact does not remove the statutory bar against registration of 'trade-marks which are identical with a registered or known trade-mark owned and in use by another and appropriated to merchandise of the same descriptive properties;' and no one would seriously argue that the two publications are not merchandise of the same descriptive properties within the meaning of the statute."

In the trial of the case in this court the testimony of two trade witnesses was submitted to the effect that in their opinions there would be no confusion in the trade between the section of the weekly newspaper of the Philadelphia Inquirer carrying the mark "Everybody's Weekly" and that of the British magazine entitled on the outside cover "Everybody's–the popular Weekly" and the inside pages containing the caption "Everybody's Weekly". By a deposition taken in the interference proceeding in the Patent Office, it appeared that a New York news dealer had for some six years prior to 1938 handled the British magazine, importing it directly from London and selling a limited number of copies sometimes by subscription and sometimes at retail. The prior use of the mark by the British magazine was conceded by counsel for the Philadelphia Inquirer Company. A physical comparison of the newspaper section forming a part of the Sunday edition of the Philadelphia Inquirer, to which the mark "Everybody's Weekly" is applied, with the British magazine discloses a general similarity of subject matter, and little difference in physical appearance. The contents of both are principally short stories or other articles very copiously and largely illustrated by pictures, with some advertising matter. The chief physical difference is in size, the newspaper section consisting of a comparatively few pages, the sheets approximating the size of a newspaper, while the British magazine

more nearly resembles the kind of a publication generally referred to as a magazine, although in the particular instance it is evidently one of the cheaper varieties selling in London for 2 pence per copy and at retail in this country at 10 cents per copy. The opinion of the trade witnesses that confusion to the public as purchasers does not exist was based principally on the fact that the method of distribution of the two periodicals is different, in that the British magazine is sold individually as an entity, while the weekly newspaper section is sold presently only as a part of the Sunday Philadelphia Inquirer, and that a purchaser of the latter does not ask for the section called "Everybody's Weekly" but for the "Philadelphia Inquirer". But of course the present method of distribution may conceivably be changed for one or both of the publications although it is fairly to be noted that the application for the registration of the mark is expressly limited to use for a weekly newspaper section.

The controlling statute on the right to registration is section 5 of the Act of Congress of February 20, 1905, now with amendments codified in 15 U.S.C.A. § 85. This, so far as applicable, provides: "No mark by which the goods of the owner of the mark may be distinguished from other goods of the same class shall be refused registration as a trade-mark on account of the nature of such mark unless such mark—" consists of certain prohibited matter—"*Provided,* That trade-marks which are *identical with a registered or known trade-mark owned and in use by another and appropriated to merchandise of the same descriptive properties,* or which so nearly resemble a registered or known trade-mark owned and in use by another and appropriated to merchandise of the same descriptive properties as to be likely to cause confusion or mistake in the mind of the public or to deceive purchasers *shall not be registered.*" (Italics supplied.)

Analysis of the quoted proviso shows that therein two separate classes of marks are not entitled to registration: (1) the mark which is *identical* with another prior mark appropriated to merchandise of the *same descriptive properties* (or, for short, of the same class); and (2) marks which though *not identical* so nearly resemble another prior mark applied to the *same class of merchandise* that thereby confusion would be likely to result. As to the first class, if the marks are identical and the

merchandise the same, registration is by the statute refused without extrinsic proof as to the likelihood of confusion; while in the second class, where the marks are similar but not identical, the registration is permitted, even though the merchandise is of the same class, unless the similarity of the marks is likely to cause confusion.

In the instant case the marks themselves are clearly identical, and if the merchandise to which they are respectively appropriated is of the "same descriptive properties", then, by the very terms of the statute, registration of the mark is not permissible. The determinative question therefore is whether the newspaper section of the Philadelphia Inquirer is an article of the "same descriptive properties" as the British magazine. I conclude that the two publications are of the same class, and, therefore, the Commissioner was right in refusing registration, and the complaint must be dismissed.

The principal contention of counsel for the plaintiff here is that the mark should be registered because the evidence affirmatively shows that confusion is not likely to result, even though the two publications are of the same descriptive properties, or the same class, in the ordinary sense of the words of the statute; or, as otherwise stated, that, to determine whether merchandise is of the same class, resort must be had to the extrinsic evidence of possible confusion, or its absence, even though the merchandise on inspection is obviously intrinsically of the same class. I do not think this is the proper construction of the statute. The test of confusion is expressly related to the similarity of the marks, and not to the determination of the descriptive properties of the merchandise. The latter is to be determined, like other questions of fact, on the whole of the relevant evidence. If the merchandise of itself is obviously of the same class, that fact cannot properly be disregarded merely because individual opinion testimony of witnesses tends to show that likelihood of confusion is non-existent. But of course where there is doubt whether the merchandise, intrinsically considered, is of the same class, resort may very properly be had to extrinsic evidence as to confusion, which may in any such given case be of controlling importance in view of the undoubted consideration that the primary purpose of the *whole trade-mark* law, as a part of the wider subject of unfair competition, is to prevent confusion of the public as to the origin of goods of competing vendors. American Steel Foundries v. Robertson, 269 U.S. 372, 380, 46 S.Ct. 160, 70 L.Ed. 317; 63 C.J. Trade-Marks, p. 474, § 147; Affiliated Products, Inc., v. Crazy Water Co., Cust. & Pat.App., 104 F.2d 366, 367.

The contention that obvious intrinsic similarity of merchandise can be negatived by evidence showing absence of likelihood of confusion is given same color by certain language used in some of the earlier decisions of the Court of Customs and Patent Appeals, a court specially experienced in trade-mark law by reason of the numerous cases presented to it on appeals from the Commissioner of Patents. In B. F. Goodrich Co. v. Hockmeyer, Cust. & Pat.App., 40 F.2d 99, 103, it was said:

"The words 'same class' and 'same descriptive properties' were intended to be given a limited or an extended meaning and application, according to whether or not the use of identical or similar trade-marks would be likely to cause confusion or mistake in the mind of the public or to deceive purchasers."

As pointed out by Judge Lenroot in a special concurring opinion in the same case (40 F.2d at page 105) the seeming effect of this construction of the statute is that "the consideration of confusion is always necessary in order to determine class." But in the much later case of Meredith Pub. Co. v. O. M. Scott & Sons Co., Cust. & Pat. App., 88 F.2d 324, 326, presiding Judge Graham, after adverting to some expressed uncertainty as to the effect of former decisions of the court in relation to the subject matter, and after extensive review of the cases, corrected the misapprehension by saying:

"It is true that in both the preceding cases, there were expressions which, taken by themselves, and without regard to the context and the general purport of the opinions, might have indicated that the existence of confusion was the test by which we should determine whether the goods were of the same descriptive properties. However, the cases should not be so read. When we consider the degree of similarity of the trade-marks and goods involved in those cases, the state of the facts and the general conclusions arrived at by the court, it will be seen that the court was endeavoring to give to the words 'same descriptive properties' a reasonable application and meaning, in order to effectuate the purposes

of the registration act, and did not have in mind the virtual elimination of the words from the statute."

It is quite impossible in an opinion of any ordinary length to review the multitudinous cases in the Court of Customs and Patent Appeals and in other courts in which the similarity of marks or merchandise have been considered in relation to trade-marks. Each case is necessarily ruled by its peculiar facts. But generally it may be deduced from many decisions of the Court of Customs and Patent Appeals that that court has given a very liberal interpretation to the phrase "merchandise of the same descriptive properties" for the purpose of effecting what is considered the dominant purpose of the Act, to prevent possible confusion, with the result that many identical or similar marks have been refused registration even when the respective articles were, intrinsically considered, quite different. Thus, under particular facts, *canned fish* and *canned tea* were held of the same descriptive properties (Tetley & Co., Inc., v. Bay State Fishing Co., Cust. & Pat.App., 82 F.2d 299); and *boots and shoes* were held of the same class as *leggings, knickerbockers and rompers* (B. F. Goodrich & Co. v. Hockmeyer, Cust. & Pat.App., 40 F. 2d 99); and *horse-radish, olive spread* and similar relishes were held of the same class as *coffee and tea* (Cheek-Neal Coffee Co. et al. v. Hal Dick Mfg. Co., Cust. & Pat. App., 40 F.2d 106, 107); and a packaged pectin product for making *jams and jellies* was held of the same class as packaged *dried skimmed milk*. General Foods Corp. v. Casein Co., Cust & Pat.App., 108 F.2d 261. The liberality of these decisions, in order to prevent possible confusion, may be seen upon comparison with the Supreme Court cases of American Steel Foundries v. Robertson, Commissioner, 269 U.S. 372, 380, 46 S.Ct. 160, 70 L.Ed. 317, and Beech-Nut Packing Co. v. P. Lorillard Co., 273 U.S. 629, 47 S.Ct. 481, 71 L.Ed. 810; and also Wagner's Sons Co. v. Orange Snap Co., 5 Cir., 18 F.2d 554. Certainly the Court of Customs and Patent Appeals has generally applied a more liberal interpretation of the statutory phrase "merchandise of the same descriptive properties" than is necessary in this case to uphold the action of the Commissioner. No case has been called to my attention under comparable facts that would justify the conclusion that the respective publications in the instant case do not constitute merchandise of the "same descriptive properties".

■■ It must also be remembered that the statute is necessarily of limited scope and effect in that it does not create or establish substantive property rights in trade-marks, which really depend upon the laws of the particular States (American Steel Foundries v. Robertson, supra, 269 U.S. at page 381, 46 S.Ct. 160, 70 L.Ed. 317); and the effect of registration is not to create trade-mark rights theretofore non-existent, but only to give publicity to existing rights and claims and to facilitate remedies therefor. United States Printing & L. Co. v. Griggs, Cooper & Co., 279 U.S. 156, 49 S.Ct. 267, 73 L.Ed. 650; 63 C.J.Trademarks, pp. 505, 506, s. 205. A trade-mark owner who seeks the benefit of the registration statute must obviously accept the conditions on which the permission for registration is given. As the applicable language of the statute refuses registration where the mark is identical with a prior mark on the same class of goods, the applicant for registration here has no just cause of complaint because his mark was denied registration. The Commissioner well summarized the matter when he finally said:

"It must be conceded that the likelihood of confusion is slight, but that fact does not remove the statutory bar against registration of 'trade-marks which are identical with a registered or known trade-mark owned and in use by another and appropriated to merchandise of the same descriptive properties'; and no one would seriously argue that the two publications are not merchandise of the same descriptive properties within the meaning of the statute."